IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GRETCHEN CHAPMAN, on behalf of                  6:13-cv-00595-MA
ANGELA SANDERS,
                                                OPINION AND ORDER
                    Plaintiff,

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

KATHRYN TASSINARI
ROBERT A. BARON
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street, Suite 200
Eugene, Oregon 97401

        Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

GERALD J. HILL
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Gretchen Chapman, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying Angela Sanders's applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Ms. Sanders (Claimant) protectively filed applications for DIB and SSI on March 6, 2009, alleging disability due to bipolar disorder, anxiety disorder, fibromyalgia, severe depression, and diabetes. Tr. 175. Her applications were denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on November 18, 2011, at which Claimant was represented by counsel and testified.

On December 1, 2011, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Claimant passed away after the ALJ issued his decision, but before the Appeals Council declined review. Accordingly, Plaintiff substituted as a party in Claimant's place. After the Appeals

Council declined review of the ALJ's decision, Plaintiff timely filed a complaint in this Court.

## FACTUAL BACKGROUND

Born on September 27, 1969, Claimant was 39 years old on the alleged onset date of disability and 42 years old on the date of the hearing. Claimant obtained her high school equivalency and had past relevant work as a Sandwich Maker and Fitting Room Attendant. Tr. 67, 180.

Claimant alleged her conditions became disabling on August 1, 2009. Tr. 42. Claimant testified about her limitations at the hearing and submitted an Adult Function Report. Tr. 43-66, 190-97. In addition, Plaintiff, Claimant's mother, submitted a Third Party Function Report. Tr. 198-205. Kurt Brewster, M.D., completed a physical examination and submitted an opinion as to Claimant's physical limitations. Tr. 246-56. Michael R. Villanueva, Psy.D., completed a psychological examination and submitted an opinion as to Claimant's mental limitations. Tr. 259-63. Judith Eckstein, Ph.D., also conducted two psychological evaluations, and submitted opinions dated February 1, 2011, and January 12, 2012. Tr. 535-45, 624-29. Megan D. Nicoloff, Psy.D., reviewed Claimant's records through July 8, 2009, and submitted a Mental Residual Functional Capacity Assessment. Tr. 279-81. Finally, Sharon B. Eder, M.D., reviewed Claimant's records through July 16, 2009, and submitted a Physical Residual Functional Capacity Assessment. Tr. 282-89.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that Claimant did not engage in substantial gainful activity after the alleged onset date, August 1, 2009. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 18.

At Step Two, the ALJ found Claimant's major depressive disorder, panic disorder with agoraphobia, personality disorder with obsessive-compulsive features, remote history of alcohol abuse, fibromyalgia, diabetes, and morbid obesity were severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 18-19.

At Step Three, the ALJ determined that Claimant did not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 19-20.

The ALJ found Claimant had the residual functional capacity (RFC) to perform a range of medium work, except that Claimant was further limited to six hours of sitting and six hours of standing or walking in an eight-hour workday with normal breaks; frequent climbing of stairs or ramps, but only occasional balancing, stooping, kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds; unskilled work that involves routine, repetitive tasks and simple reasoning; occasional, brief contact with the general public; and tasks involving no teamwork. Tr. 20-24.

At Step Four, the ALJ found Claimant unable to perform any past relevant work. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 24-25.

At Step Five, the ALJ found that Claimant could perform jobs that exist in significant numbers in the national economy including Laundry Worker, Cleaner, and Folder. See 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a; Tr. 25-26.

Accordingly, the ALJ found Claimant was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises four issues on appeal. First, Plaintiff argues the ALJ improperly rejected Claimant's testimony. Second, Plaintiff maintains the ALJ erroneously failed to credit Dr. Eckstein's opinions. Third, Plaintiff submits the ALJ improperly rejected the Mental Residual Functional Capacity Assessment of Dr.

Nicoloff.  Finally, Plaintiff asserts the ALJ erred at Step Five because the vocational hypothetical did not include all of Claimant's limitations.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The Court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.  Claimant's Testimony

Plaintiff first argues the ALJ improperly rejected Claimant's testimony.  In deciding whether to accept subjective symptom

6 - OPINION AND ORDER

testimony, an ALJ must perform two stages of analysis.   20 C.F.R.
§ 404.1529.   First, the claimant must produce objective medical
evidence of an underlying impairment that could reasonably be
expected to produce the symptoms alleged.   Smolen v. Chater, 80
F.3d 1273, 1281-82 (9th Cir. 1996).   Second, absent a finding of
malingering, the ALJ can reject the claimant's testimony about the
severity of her symptoms only by offering specific, clear, and
convincing reasons for doing so.   Id. at 1281.   The ALJ's reasons
for rejecting a claimant's testimony must be supported by
substantial evidence in the record.   See Carmickle v. Comm'r Soc.
Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

If an ALJ finds the claimant's testimony regarding her
subjective symptoms unreliable, the "ALJ must make a credibility
determination citing the reasons why the testimony is
unpersuasive."   Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595,
599 (9th Cir. 1999).   In doing so, the ALJ must identify which
testimony is credible and which testimony undermines the claimant's
complaints, and make "findings sufficiently specific to permit the
court to conclude that the ALJ did not arbitrarily discredit [the]
claimant's testimony."   Thomas v. Barnhart, 278 F.3d 947, 958 (9th
Cir. 2002).   The ALJ may rely upon ordinary techniques of
credibility evaluation in weighing the claimant's credibility.
Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the November 18, 2011 hearing, Claimant reported she stopped working at a Subway sandwich shop on June 6, 2010 because she was fired as a result of her medical issues. Tr. 46. Claimant testified that she could not work full-time at the time of the hearing because of a sciatic nerve problem, joint pain, hip and shoulder pain, two-to-three anxiety attacks per day, and bipolar disorder. Tr. 48-49. Claimant testified that these limitations caused her to occasionally require help getting out of bed and using the restroom. Tr. 50. As to her mental limitations, Claimant testified she began mental health treatment in September of 2009 because of depression. Tr. 52. Claimant explained that while her bipolar disorder causes her to occasionally have short periods during which she feels better, her depression continued through the date of the hearing. Tr. 53-54.

Claimant reported that she cried frequently in her prior workplace, often fell asleep at work, and felt like her coworkers and supervisors were "talking bad" about her and "working against" her. Tr. 57-58. Claimant testified that her supervisor informed her that medication was affecting Claimant's work. Tr. 58.

As to her daily activities, Claimant testified that her mother helped with the daily chores, including laundry, dishes, and vacuuming. Tr. 56. Claimant reported that her anxiety caused her to board up her windows and build a large fence so nobody could see her. Tr. 60.

In her May 11, 2009, Adult Function Report, Claimant described her daily activities as waking up, preparing her youngest child for school with help from Claimant's mother, taking a nap, working from approximately 11:00 a.m. until 4:00 p.m., and then returning home to take a nap, watch a movie, and go to bed.  Tr. 190.  Claimant reported that her pain interrupts her sleep and that she sleeps in a sitting position at times because laying down is uncomfortable. Tr. 191.  Claimant noted difficulties bathing, caring for her hair, shaving, and using the restroom.  Tr. 191.  Claimant reported that she can only cook simple foods once per week and performs household chores for a "couple hours" once or twice per week.  Tr. 192.

Claimant checked that her conditions affect her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others.  Tr. 195. Claimant reported that she could lift more than 30 pounds and could walk approximately one-half mile before needing ten minutes of rest.   Tr.  195.   Claimant  indicated  she  had  difficulty "concentrating, thinking, and staying focused," such that she could only pay attention for approximately one-half hour.  Tr. 195. Claimant reported that she cannot handle stress and has anxiety caused by "people, neighbors, open windows[,] doors[,] and open curtains."  Tr. 196.

The ALJ rejected Claimant's testimony because the medical evidence did not support the presence of a disabling physical condition, Claimant demonstrated inconsistent effort during medical and psychological examinations, and the record as a whole indicated Claimant's mental functioning was not disabling with the exception of a "relatively short period of dysfunction brought on by multiple psychosocial stressors." Tr. 22-24. I conclude these reasons constitute clear and convincing reasons, supported by substantial record evidence, to reject Claimant's testimony.

The ALJ reasonably found that the medical record did not support Claimant's allegations of significant physical limitations. Indeed, "based on available medical record and findings on exam," Dr. Brewster opined Claimant had "minimal indication to limit claimant" although Dr. Brewster noted that he had a limited medical record to review. Tr. 255. The record contains additional medical records concerning Claimant's physical impairments that were not available to Dr. Brewster, but, consistent with Dr. Brewster's evaluation, they suggest modest limitations. On June 17, 2010, Bryan McNutt, ANP, Claimant's primary care provider, submitted a letter noting that Claimant carried multiple diagnoses, but indicated that Claimant was primarily limited by her mental impairments.[1]  Tr. 300.  The ALJ reasonably noted the record

---

[1] Plaintiff agrees with the ALJ's assessment that psychological limitations were the primary cause of Claimant's alleged disability. Pl.'s Brief (#14) at 18.

concerning Claimant's physical limitations was inconsistent with Claimant's allegations of very serious physical impairments. Accordingly, the ALJ properly cited incongruence between Claimant's allegations as to her physical limitations and the medical record as a significant reason to reject Claimant's testimony.

The ALJ also reasonably noted poor and inconsistent effort in examination as a reason to reject Claimant's testimony. Dr. Brewster noted that Claimant demonstrated positive Waddell's signs, and had "variable grip strength, at times varying by greater than 20 pounds indicating some inconsistency of effort." Tr. 254. Dr. Brewster noted, however, that these inconsistencies "may not be volitional but may be related to non-physiological (i.e. psychological issues) which affect claimant's perception of pain and function." Tr. 254. Similarly, Dr. Eckstein noted that there were indications that Claimant "endorsed items that present an unfavorable impression" which "raises the possibility of a mild exaggeration of complaints and problems." Tr. 541. Accordingly, the ALJ reasonably noted inconsistencies in Claimant's examination effort as a reason to discredit her testimony.

Finally, the ALJ found that the record suggested Claimant's mental limitations were not disabling, with the exception of a period of exacerbation caused by psychosocial stressors. Thus, the ALJ found that the record was inconsistent with Claimant's allegations of continuous, severe mental impairments. This point

was the ALJ's primary focus throughout the course of the disability evaluation. Although I acknowledge the evidence in this respect is susceptible to more than one rational interpretation, I conclude the ALJ's finding is supported by substantial evidence.

As relevant to this case, Claimant first sought mental health treatment in September of 2009 after her hours were cut back at work and her boyfriend was in a serious auto accident. Tr. 525. Indeed, throughout late-2009 and portions of 2010, Claimant reported significant feelings of depression and anxiety. E.g., Tr. 481-82, 484-85, 487, 490-91, 513. Throughout this period Claimant experienced a number of stressors that worsened her symptoms.

As 2010 progressed, however, Claimant began to show improvement. On September 1, 2010, Claimant's primary clinician noted that Claimant had "less manic symptoms since referred here for [medication]," was "more alert," had "reduced" depression, and her panic attacks had decreased in frequency from several per day to three per week. Tr. 506. Treatment records throughout late-2010 indicate that Claimant's mental health issues had largely moderated and stabilized. E.g. Tr. 452, 453, 455-56, 458, 462-63. On December 8, 2010, after Claimant discovered that her daughter had been the victim of sexual assault, Claimant reported that "her mood was stable prior to this revelation, and she had been doing well with her medication." Tr. 450.

Claimant's mental health symptoms understandably worsened after this traumatic discovery. Tr. 439-50. By February of 2011, however, Claimant's symptoms were improving again, with diminishing depression and anxiety, and Claimant's medication making "a significant difference for her with her emotions." Tr. 434-38. By March and April, Claimant's depression and anxiety were largely well-controlled with a change in her medication. Tr. 604-05. Over the course of the next several months, Claimant reported mild or moderate depression and anxiety even with several significant stressors in her life. Tr. 599-603.

Throughout the rest of the period leading up to the hearing, Claimant's psychological symptoms remained largely stable. Although Claimant had occasional setbacks related to incidents in her family, she frequently reported significant improvement. See Tr. 590, 597-98. For example, in June of 2011, Claimant indicated she did not feel depressed, noted her mood was "stable" and called her anxiety "manageable." Tr. 599. On July 27, 2011, Claimant reported having a "wonderful week." Tr. 596. On August 10, 2011, Claimant reported she was "doing wonderful" and her mood was good and stable despite family stressors, and although she had periods of high anxiety, it was manageable and panic attacks were rare. Tr. 593-94. Again on August 31, 2011, Claimant reported "doing wonderful" and "feeling good" despite stress and being behind on bills. Tr. 591. After a difficult week in late-September of 2011,

Claimant still reported "doing awesome" and being "very pleased with the way she is doing" with self-ratings for anxiety and depression "within normal limits."    Tr. 586-88.    This pattern continued into November of 2011, the same month as the hearing, in which Claimant reported "doing very well" for four consecutive weeks.    Tr. 582.

Thus, the ALJ rationally found that Claimant's functioning improved throughout the treatment record up to the date of the hearing, notwithstanding some periods of poor functioning secondary to considerable social stressors.    The ALJ's finding in this respect is markedly inconsistent with Claimant's testimony at the hearing that she had two-to-three panic attacks per day, experienced significant depression, and only experienced improvement during occasional manic periods.    Tr. 48-49, 53-54. Accordingly, this is a convincing reason, supported by substantial evidence, to reject Claimant's testimony as to the severity of her psychological symptoms.

In sum, I conclude the ALJ's reasons for discrediting Claimant's testimony, taken together, constitute clear and convincing reasons supported by substantial evidence.    The ALJ properly weighed Claimant's testimony.

## II.  **Medical Testimony**

Plaintiff next argues the ALJ erred in discrediting the opinion of Drs. Eckstein and Nicoloff.    The Commissioner must

provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record.  Id.  "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

"'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'"  Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)).  The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony."  Id.

**A.    Dr. Eckstein**

Dr. Eckstein conducted two evaluations and submitted two opinions for the record.  In the first opinion, dated February 1, 2011, Dr. Eckstein noted that Claimant's "daily activities appear

to be limited by her chronic pain issues," as well as "chronic depression and anxiety issues that are still evident despite [Claimant's] use of psychotropic medications." Tr. 542. Dr. Eckstein also noted that Claimant reported "ongoing difficulty with concentration" as well as short-term memory deficits. Tr. 542. Dr. Eckstein opined that she believed it was "unlikely that Ms. Sanders could complete a full work day without significant interruptions from both medical and psychological issues." Tr. 542. Dr. Eckstein also reported that Claimant would have marked limitations in her ability to accept instructions and respond appropriately to criticism. Tr. 545.

In the second evaluation, performed on January 12, 2012, after the ALJ issued his decision, Dr. Eckstein again found that Claimant had "significant psychological impairment that is likely to be long-standing if not permanent in duration." Tr. 627. Dr. Eckstein's diagnoses "remained the same as those given at the time of [Dr. Eckstein's] previous evaluation on February 1, 2011 with no improvement noted." Tr. 627.

The ALJ only partially credited Dr. Eckstein's opinion because it was inconsistent with the improvements in Claimant's functioning in the record. Because Dr. Eckstein's opinions were contradicted by the lesser findings of Dr. Villanueva, the ALJ was required to cite specific and legitimate reasons to reject Dr. Eckstein's opinions. I conclude the ALJ did so.

16 - OPINION AND ORDER

As discussed above, the ALJ reasonably found that Claimant demonstrated significant improvement in her mental functioning after Dr. Eckstein's first evaluation.    Indeed, Dr. Eckstein's February 1, 2011, evaluation took place near the nadir of Plaintiff's psychological functioning in the wake of the discovery of Claimant's daughter's sexual assault.    Under the ALJ's reasonable interpretation of Claimant's mental health treatment record, this was a compelling reason to partially reject Dr. Eckstein's opinion.

Although the ALJ never had an opportunity to consider Dr. Eckstein's second opinion dated January 12, 2012, the ALJ's same basic rationale applies with equal force; Dr. Eckstein's opinion was inconsistent with the ALJ's reasonable interpretation of considerable portions of Claimant's treatment records throughout 2010 and 2011.[2]  It is clear from Dr. Eckstein's 2012 opinion that she did not believe Claimant's psychological functioning improved since her original evaluation in February of 2011.    The ALJ's finding to the contrary, however, is supported by substantial evidence.    Accordingly, Dr. Eckstein's 2012 opinion does not deprive the ALJ's decision of substantial evidence.    <u>Brewes</u>, 682

---

[2] When the Appeals Council considers evidence that was not before the ALJ in denying review, the court reviews the entire record, including the evidence submitted first to the Appeals Council, to determine if the ALJ's opinion is still supported by substantial evidence.  <u>Brewes v. Comm'r Soc. Sec. Admin.</u>, 682 F.3d 1157, 1163 (9th Cir. 2012).

F.3d at 1163.   The ALJ appropriately weighed Dr. Eckstein's opinions.

### B.   Dr. Nicoloff

Plaintiff next argues that the ALJ rejected Dr. Nicoloff's opinion because the ALJ failed to incorporate into the RFC limitations concerning the type of supervisor Claimant could tolerate and specifically addressing Claimant's concentration, persistence, and pace capabilities.   The ALJ gave great weight to Dr. Nicoloff's opinion along with the other reviewing opinions. Tr. 23.   Accordingly, the RFC and vocational hypothetical must be reasonably consistent with Dr. Nicoloff's opinion.   Stubbs-Danielson, 539 F.3d at 1174.

### 1.   Concentration, Persistence, and Pace

With respect to concentration, persistence, and pace, Dr. Nicoloff opined that "[Claimant] displays the ability to organize [and] direct her behavior [and] to carry out simple [and] routine tasks that do not require sustained concentration or vigilance." Tr. 281.   Dr. Nicoloff also noted that "[Claimant] exhibits the capacity to understand [and] remember short[,] simple directions," and "would do best [with a] predictable workplace routine to follow."   Tr. 281.   The ALJ limited Claimant to "unskilled work that involves routine, repetitive tasks and simple reasoning."   Tr. 21.

I find this limitation is a reasonable translation of Dr. Nicoloff's opinion because it appears Dr. Nicoloff assessed Claimant as capable of performing the simple, routine, repetitive work to which the ALJ limited Claimant. It is not clear from the face of Dr. Nicoloff's opinion whether Dr. Nicoloff intended the note about "sustained concentration or vigilance" to be an additional limitation on the restriction regarding "simple and routine tasks" or merely a phrase clarifying that "simple and routine tasks," by their nature, do not require "sustained concentration or vigilance." The ALJ adopted the latter interpretation. Because that is a reasonable interpretation of the opinion, the ALJ's translation of Dr. Nicoloff's opined limitations in this respect is entitled to deference.

### 2. Interaction with a Supervisor

Dr. Nicoloff also opined that Claimant "should not be expected to work in close cooperation with coworkers and will respond to a *routine, supportive lay supervisor (not overly harsh or highly critical style)*." Tr. 281 (emphasis added). The ALJ did not include a limitation concerning Claimant's ability to react to overly harsh or highly critical supervisors in the RFC.

Read as a whole, this segment of Dr. Nicoloff's opinion provides that Claimant can work under "routine, supportive lay supervisor[s]," but that there may be some "overly harsh" or "highly critical" supervisors to which Claimant could not respond.

Tr. 281. Dr. Nicoloff's use of the adjective "routine" to describe
an appropriate supervisor juxtaposed against the use of the phrases
"overly harsh" and "highly critical" to describe an inappropriate
supervisor for Claimant makes clear that Dr. Nicoloff thought
Claimant could work under a typical supervisor, but may have
trouble responding to an atypically harsh or critical supervisor.

Even if the ALJ erred in failing to include this limitation in
the RFC, such error would be harmless. ALJ error is harmless if
such error was "inconsequential to the ultimate nondisability
determination." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050,
1055 (9th Cir. 2006). As noted above, Dr. Nicoloff's opinion
concerning overly harsh and critical supervisors did no more than
indicate that Claimant may have difficulties dealing with
supervisors who are atypical in this respect. This limitation has
nothing to do with the *nature* of the work Claimant could perform,
but rather could at most reduce the number of jobs available to
Claimant in the fields cited by the ALJ.

The Ninth Circuit has held that as few as 25,000 jobs
available in the national economy or 900 jobs available in the
regional economy are sufficient to constitute jobs in "significant
numbers." Gutierrez v. Comm'r Soc. Sec. Admin., 740 F.3d 519, 529-
30 (9th Cir. 2014); Yelovich v. Colvin, 532 F. App'x 700, 702 (9th
Cir. 2013). The jobs relied upon by the ALJ represent, in
combination, 1,355,000 jobs in the national economy and 6,715 jobs

20 - OPINION AND ORDER

in Oregon.  Tr. 25.  These numbers are, respectively, 54.2 times (1,355,000/25,000) the significance threshold for jobs in the national economy and 7.46 times (6,715/900) the significance threshold for jobs in the regional economy.  In light of the number of jobs cited by the ALJ, a relatively marginal reduction in the number of jobs available to Claimant to accommodate her inability to respond to atypically harsh or critical supervisors, then, could not undermine the ALJ's finding that a significant number of jobs existed in the fields cited that Claimant could perform.  Thus, any error in failing to incorporate Dr. Nicoloff's opinion concerning overly harsh or highly critical supervisors would be "inconsequential to the ultimate nondisability determination." See Stout, 454 F.3d at 1055.  The ALJ did not commit harmful error in his consideration of Dr. Nicoloff's opinion.

### III. <u>Adequacy of the Vocational Hypothetical</u>

Finally, Plaintiff argues the vocational hypothetical was insufficient to permit the ALJ to rely on the VE's testimony to carry the Commissioner's burden at Step Five for two reasons. First, Plaintiff submits the hypothetical omitted limitations found by Drs. Eckstein and Nicoloff.  Second, Plaintiff asserts the vocational hypothetical did not include a concentration, persistence, and pace limitation the ALJ included at Step Two of the sequential analysis.

A vocational hypothetical is sufficient if it includes all of the claimant's limitations that the ALJ finds credible and are supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1217–18 (9th Cir. 2005). I conclude the vocational hypothetical was sufficient to permit the ALJ to rely on the VE's testimony at Step Five.

Plaintiff's first argument is foreclosed by the discussion above. Because, as discussed above, the ALJ did not commit reversible error in weighing the opinions of Drs. Eckstein and Nicoloff, the vocational hypothetical was sufficient in this respect to carry the Commissioner's burden at Step Five.

Plaintiff's second argument is incorrect because the limitations prescribed in the Step Three analysis are not necessarily the same as those in the RFC. The RFC, and by extension the vocational hypothetical, are sufficient where the ALJ properly considers "the step-3 limitations along with 'all of the relevant evidence in the case record.'" Israel v. Astrue, 494 F. App'x 794, 796 (9th Cir. 2012) (quoting SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)) (emphasis in original). In addressing a similar argument concerning inclusion of concentration, persistence, or pace limitations at Step Three but not an identical limitation in the RFC, the Israel court analogized to Stubbs-Danielson and found that an RFC "'adequately captures restrictions related to concentration, persistence, or pace where the assessment

is consistent with restrictions identified in the medical testimony.'" <u>Id.</u> (quoting <u>Stubbs-Danielson</u>, 539 F.3d at 1174).

Here, like <u>Israel</u>, the ALJ included a moderate limitation in concentration, persistence, or pace at Step Three, but only limited Claimant to "unskilled work that involves routine, repetitive tasks and simple reasoning." Tr. 20-21. This limitation adequately captures the restrictions related to concentration, persistence, or pace because it is reasonably consistent with the opinions of Dr. Nicoloff, as noted above, and Dr. Villanueva. <u>See</u> Tr. 262 (noting that Claimant was "able to maintain adequate attention" in a psychological examination). Accordingly, I conclude the ALJ's RFC and vocational hypothetical were sufficient.

<u>CONCLUSION</u>

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this _18_ day of August, 2014.

<em>Malcolm F. Marsh</em>

Malcolm F. Marsh
United States District Judge

23 - OPINION AND ORDER